**BURSOR & FISHER, P.A.**
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: slitteral@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA GOSHERT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| COMPANA PET BRANDS, | |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Linda Goshert ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against Compana Pet Brands ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action lawsuit brought on behalf of all people in the State of California who purchased the following Doggie Dailies-branded glucosamine supplements for dogs (the "Supplements"):
   - Advanced Hip & Joint Supplement for Dogs
   - 5-in-1 Multivitamin
   - Senior Essentials Advanced Hip & Joint
   - Senior Essentials 10-in-1 Senior Multivitamin

2. Defendant markets the Supplements as products that help maintain and improve joint health for dogs. The Supplements' labels and associated online representations refer to joint health.

3. On the label of Advanced Hip & Joint Supplement for Dogs, Defendant represents that the product "Promotes Healthy Joints, Comfort, and Mobility."[1] On the product's website, Defendant represents that "[a] daily dose of Doggie Dailies glucosamine for dogs can help support your dog's mobility, flexibility, and overall joint health" by "promot[ing] healthy hips, joints, and ligaments."[2] The website further states that the product "[h]elps maintain cartilage and connective tissue," "mobility," and "healthy bone and joint function."[3] Defendant made additional representations about the product on the Amazon's webpage,[4] where Ms. Goshert made her purchase,

---

[1] https://doggiedailies.com/products/best-glucosamine-for-dogs?variant=30882466398231 (last accessed July 28, 2022).

[2] *Id.*

[3] *Id.*

[4] https://www.amazon.com/Doggie-Dailies-Glucosamine-Dogs-Chondroitin/dp/B016MY21XG/ref=sr_1_1_sspa?crid=1G45VPFTTUQJD&keywords=doggie+dailies&qid=1659651100&s=pet-supplies&sprefix=doggie+%2Cpets%2C133&sr=1-1-spons&psc=1&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUExREFSVDRRVElZVThXJmVuY3J5cHRlZElkPUEwMzUyNjgxMTZGVks3OVFIWFlGUSZlbmNyeXB0ZWRBZElkPUEwMjA1MDg3M0sxTEpOTTA5TTZGVyZ3aWRnZXROYW1lPXNwX2F0ZiZhY3Rpb249Y2xpY2tSZWRpcmVjdCZkb05vdExvZ0NsaWNrPXRydWU= (last accessed Aug. 4, 2022).

1  including: "Promotes Cartilage Development" and "Specifically Formulated to Support Joint
2  Function."



4. Likewise, Defendant claims that its 5-in-1 Multivitamin "[p]romotes strong, flexible joints."[5]

5. Similarly, on the label of Senior Essentials Advanced Hip & Joint, Defendant advertises that the product "[h]elps maintain cartilage and connective tissue" as well as "strong bones and proper joint function."[6] On the website for Senior Essentials Advanced Hip & Joint, Defendant similarly represents that "[a] daily dose of our glucosamine chondroitin for dogs helps support the structural integrity of joints and connective tissues and eases joint stiffness due to normal daily activity."[7]

---

[5] https://www.amazon.com/Doggie-Dailies-Multivitamin-Improved-Digestion/dp/B07NSCLHK2/ref=sr_1_1_sspa?keywords=doggie%2Bdailies%2Bmultivitamin&qid=1659727264&sprefix=doggie%2Bdailies%2Bmultiv%2Caps%2C148&sr=8-1-spons&th=1

[6] https://doggiedailies.com/products/senior-essentials-advanced-hip-joint-soft-chews?variant=40774349193263 (last accessed July 28, 2022).

[7] *Id.*

6. The website for Senior Essentials 10-in-1 Senior Multivitamin likewise states that the product contains "glucosamine for joint health," and that it "[p]romotes strong bones & flexible joints."[8]

7. Defendant's supposed basis for all of those representations is that the Supplements contain Glucosamine hydrochloride (HCI) and chondroitin sulfate.

8. Each of the Supplements makes representations regarding supporting hip and joint health and/or connective tissue, and each contains these same key active ingredients.[9]



9. Unfortunately for consumers, however, the Supplements are a sham. Decades of

---

[8] https://doggiedailies.com/products/senior-essentials-10-in-1-multivitamin-soft-chews?variant=40774522109999 (last accessed July 28, 2022).

[9] https://doggiedailies.com/pages/faqs (last accessed July 28, 2022).

studies and peer-reviewed tests have repeatedly shown that supplements containing glucosamine and chondroitin do not improve joint function in dogs.

10. In 2003, a double-blind randomized controlled trial ("RCT") involving 71 dogs over 70 days compared the efficacy of Cosequin (a supplement with glucosamine and chondroitin) against two non-steroidal anti-inflammatory drugs ("NSAIDs") and a placebo.[10] The authors objectively assessed improvements in pain-related functional impairment by measuring ground reaction forces of arthritic limbs and there was subjective assessment by surgeons and owners of gait, joint mobility, joint pain and discomfort, lameness, and activity. The researchers found that dogs treated with the supplement "showed no significant response in terms of the objective gait analysis or either of the subjective assessments during the study," while there was a significant response with one of the NSAIDs. Likewise, as to the owners' subjective assessment, the supplement containing glucosamine and chondroitin provided "no significant improvements . . . ."

11. In 2017, a double-blind, randomized and placebo-controlled trial studied 60 dogs over 97 days.[11] Half of the dogs were given a supplement with glucosamine and chondroitin, and the other half were given a placebo. The authors concluded that the supplement "did not have a beneficial treatment effect when compared to placebo treatment when evaluated by [subjective] daily owner questionnaire and [objective] patient activity counts."

12. The findings in those two studies directly show that Defendant's product claims about the efficacy of the Supplements for improving joint function or treating symptoms of osteoarthritis in dogs are false and misleading. As the American College of Veterinary Surgeons defines "Osteoarthritis in Dogs," "a chronic joint disease characterized by loss of joint cartilage, thickening of the joint capsule and new bone formation around the joint (osteophytosis) and ultimately leading to pain and limb dysfunction."[12] To the extent that Defendant's representations unequivocally state

---

[10] Moreau, M., et al., *Clinical Evaluation Of A Nutraceutical, Carprofen And Meloxicam For The Treatment Of Dogs With Osteoarthritis*, Vet. Record No. 152 at 323-29 (2003).

[11] Scott, et al., *Efficacy Of An Oral Nutraceutical For The Treatment Of Canine Arthritis: A Double-Blind Randomized, Placebo-Controlled Prospective Clinical Trial*, Vet. Comp. Ortho. Traumatol., 30 at 318-23 (2017).

[12] https://www.acvs.org/small-animal/osteoarthritis-in-dogs (last accessed July 28, 2022).

that the Supplements "contain glucosamine for joint health" and "promote[] healthy hips, joints, and ligaments" when in fact the products are ineffective,[13] the labeling statements at issue intend to mislead unsuspecting customers who are looking for joint supplements to help reduce and treat canine arthritis symptoms.

13. Other publications also indicate that Defendant's product claims about the Supplements are false and misleading. Plumb's Veterinary Handbook, in both its 2008 and 2017 editions, noted that glucosamine/chondroitin supplements are "[w]ell tolerated, but efficacy is uncertain." The Banfield Journal concluded in 2010 that "the benefits of using a combination of glucosamine hydrochloride and chondroitin sulfate nutraceuticals to improve symptoms associated with canine and feline joint disease has yet to be determined."

14. Defendant is undoubtedly aware of these studies and knows that the Supplements are ineffective. Nevertheless, it continues to sell them to unsuspecting consumers in California.

15. Plaintiff thus brings her claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Supplements in the State of California for (1) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (4) Breach of Express Warranty; (5) breach of the Implied Warranty under Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.* and California Commercial Code § 2314; (6) Fraud; and (7) Unjust Enrichment.

## PARTIES

16. Plaintiff Linda Goshert is a citizen of California who resides in Fort Bragg, California. Ms. Goshert has purchased Doggie Dailies Advanced Hip & Joint Supplement for Dogs numerous times over the years for her dog. Most recently, she purchased the product in or about March 2022 from Amazon.com. Prior to her purchases, Plaintiff carefully read the product's label, including the representations that Doggie Dailies Advanced Hip & Joint Supplement for Dogs "Promotes Healthy Joints, Comfort, and Mobility." Plaintiff also relied on additional representations made by Defendant

---

[13] *Id.*

on Amazon's webpage, including: "Doggie Dailies is a safe and effective hip and joint soft chew your dog will love. Our glucosamine dog treats are specially formulated to help promote healthy joints, mobility, and flexibility. A daily dose of Doggie Dailies soft chews can help support your dog's mobility and overall joint health."  Plaintiff further relied on Defendant's product claims on the Amazon's webpage, such as "Promotes Cartilage Development" and "Specifically Formulated to Support Joint Function."  Plaintiff understood these statements to mean that the Supplements would effectively treat her dog's hip and joint pain and would support connective tissue and joint movement.  Plaintiff relied on Defendant's various claims about the Supplements and thus gave her dog the Doggie Dailies soft chews as directed.

17.    Plaintiff would not have purchased the Supplements at all or would have only been willing to pay a substantially reduced price for the Supplements, had she known that Defendant's representations were false and misleading.  As a direct result of Defendant's material misrepresentations, Ms. Goshert suffered and continues to suffer economic injuries.

18.    Plaintiff continues to desire to purchase the Supplements for her dog from Defendant. However, Ms. Goshert is unable to determine if the Supplements are actually effective at helping her dog maintain and improve joint health.  Plaintiff understands that the composition of the Supplements may change over time.  But as long as Defendant continues to represent that its Supplements "[p]romote[] healthy joints, comfort, and mobility," she will be unable to make informed decisions about whether to purchase Defendant's glucosamine Supplements and will be unable to evaluate the different prices between Defendant's Supplements and competitor's products.  Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Supplements are in fact effective at maintaining and improving joint function in dogs, just as they are marketed, labeled, packaged, and advertised by Defendant.

19.    Defendant Compana Pet Brands is a Missouri corporation with its headquarter and principal place of business located at 707 Spirit 40 Park Drive Suite 150, Chesterfield, Missouri. Compana Pet Brands is the manufacturer, seller, marketer, and distributor of the Doggie Dailies-branded Supplements.

**JURISDICTION AND VENUE**

20. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

21. This Court has personal jurisdiction over Defendant because Defendant transacts substantial business in this District, has substantial aggregate contacts with this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout this District, and purposefully availed itself of the laws of the State of California in this District. Defendant's acts and transactions giving rise to this action occurred in this District.

22. This Court is the proper venue for this action pursuant to pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims herein occurred in this District.

**CLASS ALLEGATIONS**

23. Plaintiff seeks to represent a class defined as all persons in the State of California who purchased the Supplements (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

24. **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

25. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions

affecting only individual Class members.  These common legal and factual questions include, but are not limited to, whether Defendant's labeling, marketing and promotion of the Supplements is false and misleading.

26. **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

27. **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

28. **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class on an individual basis to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## COUNT I
### Violation of Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq*.

29. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

30. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

31. California's Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA")

32. Plaintiff and members of the Class are consumers who purchased the Supplements for personal, family, or household purposes. Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

33. At all relevant times, Defendant's Supplements constituted "goods," as the term is defined by Cal. Civ. Code § 1761(a).

34. At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(c).

35. At all relevant times, Plaintiff's purchases of Defendant's Supplements, and the purchases of other members of the Class constituted "transactions," as that term is defined in Cal. Civ. Code § 1761(e).

36. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

37. The policies, acts, and practices described in this Class Action Complaint were intended to and did result in the sale of Defendant's Supplements to Plaintiff and members of the Class. Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 et seq., as described above.

38. Defendant represented that its Supplements have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5) because Defendant represented, inter alia, that the Supplements "[p]romote healthy joints, comfort, and mobility," and that Defendant's glucosamine Supplements "[h]elp[] maintain healthy bone and joint function" as well as "cartilage and connective tissue."

39. Defendant represented that its Supplements were of a particular standard, quality, and grade, when they were another, in violation of Cal. Civ. Code § 1770(7).

40. Defendant violated Cal. Civ. Code §§ 1770(a)(5) and (a)(7) by representing that its Supplements were effective for use as joint health supplements for dogs, when they in fact were not.

41. Defendant advertised its Supplements with intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.

42. Plaintiff and members of the Class suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and members of the Class would not have purchased the Supplements on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a premium price due to the mislabeling of Defendant's Supplements; and (c) Defendant's Supplements did not have the level of quality, effectiveness, or value as promised.

43. On July 11, 2022, prior to the filing of this Class Action Complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of all other similarly situated purchasers. Defendant refused to correct its practices. Accordingly, Plaintiff, individually and on behalf of the proposed Class, seeks monetary damages and injunctive relief from Defendant as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

### COUNT II
**Violation of False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

44. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

45. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

46. California's FAL (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or

performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

47. Throughout the Class period, Defendant committed acts of false advertising, as defined by §§ 17500, by using false and misleading statements to promote the sale of the Supplements, as described above, including but not limited to, misrepresenting that the Supplements "[p]romote[] Healthy Joints, Comfort, and Mobility" by "[h]elp[ing] maintain healthy bone and joint function" as well as "cartilage and connective tissue" and that its "glucosamine dog treats are specifically formulated to help promote healthy joints, mobility, and flexibility."

48. Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

49. Defendant's actions in violation of §§ 17500 were false and misleading such that the general public is and was likely to be deceived.

50. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Supplements if they had known the true facts regarding the Supplements; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Supplements; and (c) the Supplements did not have the promised quality, effectiveness, or value.

51. Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers. Plaintiff and the members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

//
//
//
//

**COUNT III**
**Violation of Unfair Competition Law ("UCL")**
**Business & Professions Code §§ 17200, *et seq*.**

52. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

53. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

54. Defendant is subject to the UCL, Bus. & Prof. Code § 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful conduct, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…." The UCL also provides for injunctive relief and restitution for violations.

55. "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

56. Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

57. Defendant has violation the UCL's "unlawful prong" as a result of its violations of the CLRA and FAL, as well as by breaching implied warranties as described herein.

58. Throughout the Class period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Supplements, as described above.

59. Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and

members of the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

60.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Supplements are fit for their purpose as joint health supplements for dogs.  Defendant's practice of injecting misinformation into the marketplace about the capabilities of its Supplements is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about their products.  Taking advantage of that trust, Defendant misrepresents the effectiveness and quality of its Supplements to increase sales.  Consumers believe that Defendant is an authority on the effectiveness and quality of dog supplements and therefore believe Defendant's representations that its Supplements are effective for their intended use as joint health nutritional supplements for dogs.

61.     Defendant's conduct described herein, violated the "fraudulent prong" of the UCL by representing that the Supplements were effective for their intended use as joint health supplements for dogs, when in fact they were not.

62.     Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the effectiveness of the Supplements, and they acted reasonably when they purchased the Supplements based on their belief that Defendant's representations were true.

63.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Supplements were untrue and misleading.

64.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the Class would not have purchased the Supplements on the same terms if they had known the true facts regarding the effectiveness of the Supplements; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations on Defendant's Supplements; and (c) Defendant's Supplements did not have the quality and effectiveness or value as promised.

65. Pursuant to California Business & Professions Code § 17203, Plaintiff and members of the Class are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interests at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT IV
## Breach of Express Warranty

66. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

68. In connection with the sale of the Supplements, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Supplements "Promote[] Healthy Joints, Comfort, and Mobility" by "[h]elp[ing] maintain healthy bone and joint function" as well as "cartilage and connective tissue" and that its "glucosamine dog treats are specifically formulated to help promote healthy joints, mobility, and flexibility."

69. In fact, the Supplements do not conform to the above-referenced representations because they are ineffective.

70. Plaintiff and the members of the proposed Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for the Supplements on account of the misrepresentations that the Supplements "Promote[] Healthy Joints, Comfort, and Mobility" by "[h]elp[ing] maintain healthy bone and joint function" as well as "cartilage and connective tissue."

71. Plaintiff's counsel notified Defendant of her claims in a demand letter, sent via certified mail, on July 11, 2022.

//
//

**COUNT V**
**Breach of Implied Warranty Under the Song-Beverly Act,**
**Cal. Civ. Code § 1790, *et seq*. and California Commercial Code § 2314)**

72. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

73. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

74. Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790. *et seq*., and California Commercial Code § 2314, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

75. The Supplements at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

76. Plaintiff and the Class Members who purchased the Supplements are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

77. Defendant is in the business of manufacturing, assembling, and/or producing the Supplements and/or selling the Supplements to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

78. Defendant impliedly warranted to retailer buyers that the Supplements were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Supplements are used. For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Defendant breached these implied warranties because the Supplements were ineffective at helping "maintain healthy bone and joint function" and "maintain cartilage and connective tissue." Therefore, the Supplements would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

79. Plaintiff and Class Members purchased the Supplements in reliance upon Defendant's skill and judgment in properly packaging and labeling the Supplements.

80. The Supplements were not altered by Plaintiff or the Class Members.

81. The Supplements were defective at the time of sale when they it the exclusive control of Defendant. The issue as described in this Complaint was latent in the products and not discoverable at the time of sale.

82. Defendant knew that the Supplements would be purchased and used without additional testing by Plaintiff and Class Members.

83. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Supplements if they knew the truth about the products, namely, that they were unfit for ordinary use.

84. Plaintiff and the Class seek compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

## COUNT VI
### Fraud

85. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

86. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

87. As discussed above, Defendant misrepresented on the Supplement's packaging that the Supplements "Promote[] Healthy Joints, Comfort, and Mobility" by "[h]elp[ing] maintain healthy bone and joint function" as well as "cartilage and connective tissue" and that its "glucosamine dog treats are specifically formulated to help promote healthy joints, mobility, and flexibility."

88. The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant is one of the top distributors of dog supplements in the United States that is undoubtedly aware of the studies finding that supplements with glucosamine and chondroitin

are ineffective for joint health in dogs. Nonetheless, Defendant continues to sell its ineffective and worthless Supplements to unsuspecting consumers.

89. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class reasonably and justifiably relied and were intended to induce and actually induced Plaintiff and members of the proposed Class to purchase the Supplements.

90. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
## Unjust Enrichment

91. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

92. Plaintiff brings this case individually and on behalf of the members of the proposed Class against Defendant.

93. Plaintiff and Class members conferred a benefit in the form of monies paid on Defendant by purchasing the Supplements.

94. Defendant voluntarily accepted and retained this benefit.

95. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the worthless Supplements, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

   (c)  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

   (d)  For prejudgment interest on all amounts awarded;

   (e)  For an order of restitution and all other forms of equitable monetary relief;

   (f)  For injunctive relief as pleaded or as the Court may deem proper; and

   (g)  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: August 10, 2022   **BURSOR & FISHER, P.A.**

            By: */s/ Sean L. Litteral*
               Sean L. Litteral

            Sean L. Litteral (State Bar No. 331985)
            1990 North California Blvd., Suite 940
            Walnut Creek, CA 94596
            Telephone: (925) 300-4455
            Facsimile: (925) 407-2700
            E-mail: slitteral@bursor.com

            **BURSOR & FISHER, P.A.**
            Joshua D. Arisohn (*Pro Hac Vice Forthcoming*)
            888 Seventh Avenue
            New York, NY 10019
            Telephone: (646) 837-7150
            Facsimile: (212) 989-9163
            E-Mail: jarisohn@bursor.com

            *Attorneys for Plaintiff*